In Re Milton Thomas. So I believe first we have Mr. Thomas himself for five minutes. Please approach and whenever you're ready. Milton Thomas. Section 524 of the Bankruptcy Code, A1 and A2. A discharge under this title avoids any judgment at any time attained to the extent that the judgment is a determination of personal liability of the debtor. It also operates under A2. It operates as an injunction against commencement, continuation, and inaction or employment of process act to collect of such debt as personal liability of the debtor, whether it is waived or not discharged. Mr. Springcourt and Taggart held that if the creditor had knowledge of the discharge and attended to actions that violate the discharge, then there is no fair ground of doubt that they can be held in contempt. The witnesses for the appellee, Ms. Blalock, testified that she was aware, had noticed and attended to actions that violate the discharge and that the discharge of debt was re-included in the share of sale. Once it is discharged, and that is on Exhibit SA-186, Lines 21-23 and SA-187, Lines 1-10 and SA-192, 1-24. Mr. Wakefield, another witness for the city, attorney for the city, stated in the record that after the discharge was entered, the city re-included the discharge debt from 1983 to present in the share of sale of 16-20 South 58th Street. He further stated that if the court were to issue some sort of order stating they were not allowed to collect taxes pre-bankruptcy and that they were only in any potential sale allowed to collect taxes from 2005 onward, the city would have no objection to that order. That's SA-207-210. By virtue of the appellee's action, they had knowledge of the court's discharge injunction and they attended to actions that violate the discharge action, tagged at 284. The lower court had failed to apply the proper standard. The appellee's objective reasoning was insufficient to excuse them for violating the discharge order and the district court should have held that the appellee held the appellee in contempt of the court for violation of the discharge. After the discharge was entered and there was no violation, there was no objection, then finality should have took place. 1381, 1328, clarity states that the court shall grant the debitor a discharge. In McComb versus Jacksonville paper, the court held that the state of mind is irrelevant in civil content environments. At 191, the court is permitted to order damages caused by the violations and measure the court's power and the measure of the court's power is determined by the requirement of full remedial relief. Mr. Thomas, can I ask you a factual question? Yes. Nothing in the record that I see suggests that you made any payments towards the lien on the 1620 property. Isn't that right? That is incorrect. Where is there anything in the record that shows that you made payments toward that lien? Can you tell us? Well, the situation was with that. Is there any evidence? Is there any piece of paper, anything you filed with the court, any page number, anything that would show us more than your say so that you made payments towards that lien? It would be in the discharge paper that was sent out to the trustee. If you don't have a page number, do you have a date? Do you have anything specific? I don't. Okay. You didn't say anything in your brief in response to the city and the amicus agreed that the lien survived. Do you argue that that lien was paid in full? I argue that lien was paid in full. But you don't have any evidence for that? Excuse me? You don't have any evidence for that? Well, the discharge, when the debt money was put into the plan, and the plan states that this was supposed to be paid. Now, after the discharge went in, I was assuming that everything was paid. The creditor made no objection. So, therefore, I assumed that they were paid the money that they were due. Okay. And I wasn't aware that they were not paid until five years later when they opened up the case. I said they had a good reason to continue the discharge. All right. The appellant is entitled to four-year relief for the appellee's action. The share sale of the appellant's property, located at 1620 South 15th Street. Mr. Thomas, your time has expired. Thank you. Thank you for your argument. Court-appointed amicus, Ms. Cahill, take a moment to get settled. And, you know, it's an unusual division of argument, but if you'd like to reserve a couple of minutes for rebuttal, we're happy to grant that. Yes, Your Honor. If I could reserve two minutes for rebuttal. Granted. Good morning, and may it please the Court. Claire Cahill with Williams & Connolly as court-appointed amicus. The court asked amicus to weigh in on one question in the civil contempt proceeding, whether the City of Philadelphia's liens on 1618 and 1620 South 58th Street were discharged in Mr. Thomas' Chapter 13 bankruptcy proceeding. The answer for the 1620 property is straightforward. No payments were made towards the City's secured balance with that lien, and so that lien passed through the bankruptcy. Now, Mr. Thomas said otherwise, but you haven't been able to find anything in the record to support that. I have not, Your Honor. Okay. But with regard to the 1618 property, Mr. Thomas made the required payments to cover the secured balance for the 1618 property, and that lien was appropriately discharged in the bankruptcy court's final order. Finality is so critical in bankruptcy proceedings that this court has said that it is a principle that anchors bankruptcy law. The City can't upend that final order of discharge now because it received constitutionally adequate notice. Mr. Thomas sent the City a notice that he had intended to file a crammed-out motion to reduce the value of the City's liens, and the City had an opportunity to contest that motion at a hearing. That's all that the Constitution requires, and the City is bound by the bankruptcy court's final order of discharge. Could you talk about due process, about the 1401 versus 1451 address, and what due process requires in terms of being reasonably calculated to inform the City? Correct, Your Honor. All that due process requires is that the notice be reasonably calculated to inform the City of the proceedings, and specifically that its rights might be adversely affected. Now, to be sure, Mr. Thomas sent the notice of motion informing the City of its crammed-out motion to a general address, the Municipal Services Building. But we maintain that that address was not only the correct address, and the City doesn't contest that it was the correct address. It simply says it was an unreasonably general address. However, Mr. Thomas was required to provide notice to his creditor, who was the City of Philadelphia, and he sent it to the City of Philadelphia at its main address. Even though this proceeding has been ongoing for 10 years in one form or another, the City of Philadelphia has never claimed that it didn't receive the notice of motion or that it was unaware of the crammed-out proceedings. In fact, it didn't even raise the fact that this was an unreasonably general address until this proceeding itself. It has never argued before that it was an unreasonable address. And so, because Mr. Thomas filed or sent the notice of motion to his creditor, and the City has never said that it did not receive that notice, I think it was a reasonable address. Further, the notice that he sent provided sufficient information to the City of Philadelphia that its interests might be affected. The content of the notice stated that he had filed a crammed-out motion and that he intended to reduce the value of the City's liens. That provided notice to the City that its rights might be affected. The City of Philadelphia claims that it needed something more than that, that it needed to know the specifics of the crammed-out motion and how much it was going to reduce the City's liens. That's not the baseline for constitutional due process, and constitutional due process does not require that the City receive the bankruptcy plan that Mr. Thomas filed. In fact, even if the City had received the bankruptcy plan that Mr. Thomas had filed, it received more notice through the notice of motion that the City's liens might be affected. Because the bankruptcy plan never lists the City of Philadelphia's liens, and it doesn't provide a specific amount that the City's liens were going to be reduced. Do you have a citation of the record for that? Yes, Your Honor. The plan is on S.A. 25 and 26, and it refers to the secured liens as a whole, but it doesn't actually identify the City of Philadelphia's liens or the amount that the City of Philadelphia would be paid. I don't think you addressed the City's objectively reasonable argument in your brief. Do you have any thoughts on that? I correct, Your Honor. We limited our brief to the question that the court asked about whether or not the liens were discharged. We do think that the City of Philadelphia is correct that it had fair reason to doubt that it was bound by the final order of discharge based on the 2013 bankruptcy court opinion, which said that it wasn't bound by the discharge order. However, I think there's still two reasons the court should address the due process argument in this case. The first is that, setting the facts aside in this case, the district court announced the incorrect test for due process. It cited Mansuray Ruffin, which has been abrogated by the Supreme Court's decision in Espinoza, and it said that the City needed actual notice of the bankruptcy proceedings. As the court made clear in Espinoza, and this court affirmed in Conglorium, all that's necessary is that the City have reasonable notice of the proceedings. I think it's worth cleaning that up. Also, this is a civil contempt proceeding, so it's looking only backwards at whether the City's past efforts can be held in contempt of the discharge order. However, it doesn't answer the forward-looking question, if the City were to try to sell Mr. Thomas' property again at a share sale, is it bound by the discharge order? And so, it's worth addressing the due process issue to clear that up for future proceedings for the 1618 property. If the court has no further questions, I will save my remainder of time for rebuttal. Granted, so we'll tack on your minute 45 to the two minutes you already reserved for rebuttal. So, save three minutes 45 for rebuttal. All right. Mr. Zerbruggen? Could you pronounce it properly? I fear I've mingled it. You're right, Judge Betus. It's Zerbruggen. Okay. Good morning, Your Honors. May it please the Court, Adam Zerbruggen for the City of Philadelphia and the School District of Philadelphia, the Attalees. Just to begin, I'd like to remind the Court that I think the Court is aware that there are three bases, separate bases, for affirming the Court's decision below. And Amicus Council does not take issue with two of them. The 1620 applies only to the 1620 property, the issue of whether the lien was satisfied. That's a basis for a partial affirmance. Yes, Your Honor. But a basis for a complete affirmance of the decision below is the Court's decision that the City's position was objectively reasonable. So even if this Court agrees with Amicus's position on whether due process was satisfied here, the Court can still affirm on the basis that the City's position – Are you walking away from the due process issue? Not at all, Judge. Judge, we maintain that the due process was not met here for two reasons. First and foremost, that the notice of Cram Down was sent to an unreasonably general address. All right. Mr. Zerbruggen, you're a Philadelphian. I'm a Philadelphian. Yes, sir. You walk down JFK Boulevard. On the 1400 block, there is one massive building. We can take judicial notice of this. There is no way to get confused about which building on the 1400 block this is being sent to. You're nodding, right? So how is it that putting 1401 versus 1451 – we're not talking about a block with 12 row houses on it. This is one block completely occupied by a building that is entirely a City of Philadelphia building, correct? That's correct, Your Honor. And the real issue here is not the 1401 really versus 1415. There is a possibility that putting the wrong address directed it not to the – or at least delayed delivery to the right building. That's a possibility. But the real problem here is directing it simply to the Municipal Services building without further placing it to the attention of a specific department. Can I ask, if you know, would the City's processes today reroute this mailing from the Municipal building to the law department? Your Honor, I'm not certain that it would, and I'm not certain that it would do so timely, which is important. I think there is an important distinction between the process today and the process 20 years ago that makes the importance of this court resolving the decision a little less pertinent. And that is the electronic filing. That's fair. What's in the record about the process in 2004? Frankly, Your Honor, next to nothing. I mean, really what we're talking about here is we're talking about the fact that U.S. mail was used to submit this notice to the Municipal Services building without any direction. Can we reasonably assume that someone opens that mail and then routes it to the right unit? Yes, Your Honor. I think that's reasonable to assume. The question really is how long does that take? And is it fair to have the City be put on notice in a period where 16 days are remaining for a response to be filed and then a further 16 days for a hearing to send a notice to a building? I mean, this is not in the record, but I would just note it's 500,000 square feet. It contains at least six City departments. Is it reasonable to assume that a City employee is going to be able to open and identify every piece of mail sent to that building and directly to route it to the appropriate unit? I think that might be the City's obligation. But there's some other documents in the record that I think raise questions about actual notice. There's a proof of claim in late July, or it's dated in late July, and then it's filed on the same bankruptcy docket that we're talking about. The ECF date is, I think, the date of the hearing. And so it's difficult when I look at those to not be thinking, like, isn't it pretty clear, as we look back at this record, that somebody in the City Law Department knew about all of this? Judge, I think it's fair to infer that the City became aware of the bankruptcy proceedings. I can't dispute that the City became aware of the bankruptcy proceedings at one point and filed a proof of claim. We don't know, though, how it became aware, what notice notified the City, and how timely that notice was routed to the City in order to do that. We know that it was routed in time for it to file the proof of claim. So was the City deprived of its notice and opportunity to be heard? I think, Your Honor, it became aware of the bankruptcy proceedings by that point. It's fair to infer. I don't think it's fair to infer that the City had actual notice of the cram-down motion and the hearing on the cram-down motion. I don't think that the proof of claim itself makes that clear. I think the proof of claim simply makes it clear that the City had notice of the bankruptcy proceedings. And that is not enough. And the courts make that clear. And I don't think amicus takes issue with the fact that the City's actual awareness of the bankruptcy proceeding itself is sufficient because the City is a secured creditor. And secured creditors can become aware of bankruptcy and say, you know what, we're going to sit back and rest on our liens on this. But that's an argument about the bankruptcy code and not the due process clause, right? I don't think so, Your Honor. I think it is about due process because due process is context-dependent. And in the context of bankruptcy, particularly with a secured creditor, what the cases say is that a secured creditor isn't on notice sufficient for due process, not simply the bankruptcy code, that it's aware of a bankruptcy proceeding. It must further inquire. It must monitor the docket or it must enter. It must take some affirmative step to become aware of all the subsequent filings. But the cases make clear before Espinoza and after that that's not an obligation of a secured creditor under the bankruptcy code and due process. Because that very reason that a secured creditor can essentially look to its liens. And it's the obligation of the debtor to take some affirmative action to eliminate that lien and to make sure that the creditor is sufficiently apprised of the fact that that's going to happen. And I don't think that happened here where Mr. Thomas sent, again, to a building. What about shortly after the Cramdown motion, the bankruptcy court itself sent an order scheduling the hearing on the confirmation of the third amended plan. And that was sent directly to the bankruptcy unit as well as to the general address. Is that actual notice? It's actual notice, again, Your Honor, of the bankruptcy, of the bankruptcy proceeding. That the plan was about to be, well, that there was a hearing to confirm the plan. Yes, but it does not inform the creditor, the city in this instance, of what the contents of the plan were. That the plan would effectively reduce the city's liens to the value of the collateral that Mr. Thomas placed on it. That is not, that's not made, the city is not made aware of that by the fact that a confirmation hearing has been scheduled. And I think the cases bear out that the mere knowledge of a confirmation hearing, the mere knowledge that a plan is going to be approved, unspecified what that plan will do and how it will affect the creditor's rights, is enough to put the creditor on inquiry notice to go and then investigate. Did the city go to the hearing? No, I don't believe it did, Your Honor. And so, in this case, we have most actual knowledge, I think from the record, we can infer actual knowledge of the bankruptcy proceeding at some point. But we can't crucially infer knowledge of the specific effect that Mr. Thomas intended on the city's interest, the city's liens. And that's the reason why the court found below and the court in the previous litigation found that there was not sufficient notice to satisfy due process here. Unless Your Honors have further questions about that, I do want to just very briefly say about the objective reasonableness to address Mr. Thomas' argument. The fact that there may have been actual knowledge of the bankruptcy is not enough to make the city's actions not objectively reasonable. The fact of the matter is that the city could reasonably, objectively, reasonably conclude that the city was not bound by the bankruptcy plan. And so, therefore, it could take the action that it did. And Amicus agrees with this, as just stated. And the court below noted there was a previous decision. So is your position on contempt based on an argument that the way you proceeded in the bankruptcy in 2004 and 2005 was reasonable or that the subsequent judicial decisions made the actions by the city after those decisions reasonable? I think both, Your Honor, but I think the latter really cements it. I think the latter, the fact that there is a judicial decision by the point of the sheriff's sale that are issued in this case, there's a judicial decision that says the city… Thomas won. Is that what you mean, Thomas won? Yes, Your Honor. Thomas won the Ruby Street proceeding. There was a decision by the bankruptcy court in that case that the city was not bound by the confirmed plan. And so by the time of the sheriff's sale that is issued here, that decision is on the books, and the city could reasonably rely on it as a fair ground of doubt. We said it's not Chris Giudicato, right? That's correct, Your Honor. It was not. Still okay to rely on it? Still okay to rely on it, Your Honor, because, again, it's a conclusion of the bankruptcy court in that case that's analyzing the plan. Again, it's not for purposes of binding Mr. Thomas in that case. That's Rez Giudicato, but it is certainly, it's fair ground to doubt the validity of the plan or the fact that the plan binds. I think that the legal reasoning in that certainly gives a fair ground of doubt, and I don't believe amicus takes issue with that. In terms of 1620, Your Honor, I'll just be very brief. I believe amicus agrees with us on this point, but there is no evidence in the record to affirm on that basis as well. The relevant part of the record here is the trustee's confirmation of the report, the final report. That's on page 58 and 59 of the appendix, and that makes clear that the payment required to satisfy the 1620 lien was not made. So we would point to that as a partial affirmance on that basis as well. So unless Your Honors have further questions, I'll rest on that. Thank you, Mr. Secretary. Ms. Cahill, I think we left you three minutes, three minutes, 45, something like that. Thank you, Your Honor. Two points in rebuttal. The city not only had notice of the bankruptcy proceeding, it knew that its liens on 1618 could be affected by the bankruptcy proceeding. And that's all that this court requires under conglorium. The city's proof of claim, which it filed in this case, was for 1618. And once it filed that proof of claim, it was on notice that its lien on that property might be affected in the bankruptcy proceeding. It then received notice of the confirmation hearing, and it did not attend the confirmation hearing where it could have filed an objection. So not only did Mr. Thomas's notice put the city on notice that he had filed a cram-down motion and that the lien might be affected through that cram-down motion, the city put that property at issue in the bankruptcy proceeding. And as the Supreme Court noted in Espinoza, once an entity has filed a proof of claim, they've submitted to the jurisdiction of the bankruptcy court, and they're aware that that claim might be affected through the proceeding. Second, the city claims that even if the notice was sent to the city of Philadelphia, it would take some time to make its way to the appropriate department, and it didn't have time to object before the hearing on the cram-down motion. However, the plan was still not confirmed until February 2005, which was months after the city would have received notice through the notice of motion. And so the city certainly had an opportunity to object in that case. And I do think that there's two separate issues here, whether the city had notice and whether the city had an opportunity to object. And so the city now claims that it could have made or does not contend, at least, that it wouldn't have made its way to the appropriate department. And there's no reason to think it wouldn't have made its way to the appropriate department before the confirmation hearing where the city would have had an opportunity to object. So because Mr. Thomas provided sufficient notice here, because the city had actual notice that its lien on 16-18 might be affected, and the city had an opportunity to object to that motion and to the disposition of its liens, we believe that due process was satisfied here. All right. We thank all three counsel for their very helpful briefing and oral argument. We thank in particular Ms. Cahill. You were appointed by this court. We thank you for your service to the court. We'd ask that the parties work together to prepare a transcript. We ask that the city, at the city's expense, that would be of help. And we'll go off the record briefly. We'd like to greet all three of you over at Sidebar to thank you for coming.